UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jerome MITCHELL,<br><br>Plaintiff,<br><br>v.<br><br>A. SILVA, et al.,<br><br>Defendants. | Case No.: 18-cv-2044-DMS-AGS<br><br>**REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION TO DISMISS (ECF No. 14)** |

When an inmate is handcuffed and subdued, prison guards may not grind pepper spray into his genitals. The inmate here insists he suffered this sad fate, among other indignities, which dooms the guards' motion to dismiss.

## BACKGROUND[1]

This case begins with a sock. Plaintiff Jerome Mitchell, a prisoner at R.J. Donovan Correctional Facility, was minding his own business when one Sergeant Poladian said, "[G]ive me what's in your sock." (ECF No. 1, at 3.) This unusual demand prompted Mitchell's brief and ill-fated flight from prison guards. With few places for Mitchell and his sock to hide, it was not long before officers overcame and pepper-sprayed him. (*Id*.)

---

[1] As required at this early stage, this Court accepts "all factual allegations in the complaint as true and constru[es] them in the light most favorable to the nonmoving party." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016).

1

Defendant Poladian kneecapped Mitchell with a baton three times, causing his leg to buckle. (*Id.*) Another defendant, Officer Silva,[2] snatched off Mitchell's shorts, shoes, and—of course—socks, while handcuffing him tightly enough to induce an asthma attack. (*Id.*) Silva then rubbed Mitchell's pepper-spray-drenched face and "aggressively" smeared the spray on Mitchell's "inner thighs and genitals." (*Id.* at 3, 9; *see also id.* at 10-11.) Poladian said, "Bitch[,] you ran from me. [N]ow we're gonna break all your shit. I'll put a knife on you[.] We will kill you." (*Id.* at 3.)

Still suffering a severe asthma attack, Mitchell was deposited in a holding cage where he lay on the floor, begging for his inhaler and hoarsely screaming, "Man down." (ECF No. 1, at 4.) Defendants Silva and Galaviz ignored his cries for help and laughed at him. (*Id.*) Galaviz added, "Sit there and shut up." (*Id.*) Over the next three and a half hours, Mitchell was left gasping and believing he "was going to die." (*Id.*)

Mitchell survived to sue the officers for First and Eighth Amendment violations. (*See* ECF No. 1, at 3-5.) His complaint does not reveal what became of the sock.

## DISCUSSION

Defendants move to dismiss only the Eighth Amendment excessive force and deliberate indifference claims, and Mitchell has thus far failed to respond. To survive a motion to dismiss, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 12(b)(6). But "naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (alterations and quotation marks omitted).

**A.  Excessive Force**

A plaintiff must prove three elements to establish an excessive force claim: (1) "the defendant used excessive and unnecessary force under all the circumstances;" (2) "the defendant acted maliciously and sadistically for the purpose of causing harm, and not in a

---

[2] "Silva" refers to defendant A. Silva. Although there are two defendants with this last name, only A. Silva has been served. (*See* ECF Nos. 8, 13.)

good faith effort to maintain or restore discipline;" and (3) "the act[s] of the defendant caused harm to the plaintiff." 9th Cir. Civ. Jury Instr. 9.26 (2018); *see also Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (holding that the "core judicial inquiry" in excessive force cases is the second element).

According to the complaint, after Mitchell was handcuffed and subdued, defendant Silva rubbed pepper spray on Mitchell's genitals. When "an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of [pepper spray] . . . constitutes excessive force." *LaLonde v. Cty. of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000); *cf. Watts v. McKinney*, 394 F.3d 710, 712 (9th Cir. 2005) (holding that "kicking a helpless prisoner's genitals was cruel and unusual conduct"). Mitchell has stated an excessive-force claim against Silva.

The case against Poladian is slightly different: He allegedly struck Mitchell with a baton in the knee three times, after Mitchell was already seized and gasping from a face full of pepper spray. (ECF No. 1, at 3.) A baton is a "deadly weapon" that can cause "deep bruising" and "blood clots capable of precipitating deadly strokes." *Young v. Cty. of L.A.*, 655 F.3d 1156, 1162 (9th Cir. 2011). The propriety of baton blows is a fact-bound inquiry that turns largely on how actively the suspect is resisting. *Cf. Paulino v. Cruz*, No. 16-cv-02642-NC, 2017 WL 2903172, at *5 (N.D. Cal. July 7, 2017) (collecting Fourth Amendment excessive force cases involving batons). The complaint pleads enough facts to make it plausible that Poladian's baton strikes were unnecessary. And the complaint more than establishes Poladian's malicious intent, based on statements such as: "We will kill you." (ECF No. 1, at 3.) So, Mitchell has sufficiently pleaded excessive force against Poladian as well.

Defendants, on the other hand, argue that Mitchell was not significantly injured, and that "de minimis injuries are insufficient to support an excessive-force claim." (ECF No. 14-1, at 7.) They are wrong about both the facts and the law. On the law, the Supreme Court "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). A court's focus should

be "on the amount of *force* used, not the nature or severity of the *injury* inflicted." *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002). Of course, the "extent of injury" is "one factor" in evaluating the force used. *Wilkins*, 559 U.S. at 37. But "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id*. at 38. At any rate, this Court must view the evidence in the light most favorable to Mitchell. *See Ebner*, 838 F.3d at 962. In that light, Mitchell's knee was so badly injured that his legs "buckled" not once, not twice, but three times—in fact, every time he tried to stand up. (ECF No. 1, at 3.) He left the scene by hopping on one leg, while enduring a life-threatening asthma attack. (*Id*.) These injuries bolster the excessive force allegation.

**B.  Deliberate Indifference**

To state a deliberate-indifference claim, the inmate must sufficiently allege: (1) "the existence of a serious medical need," and (2) the prison official's "deliberate indifference" to that need. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

Mitchell alleges that defendants Silva and Galaviz ignored his pleas for an inhaler during a serious asthma attack, and instead mocked and laughed at him. (ECF No. 1, at 4.) That is deliberate indifference. *See Harrison v. Sample*, 359 F. App'x 893, 894 (9th Cir. 2009) (finding a triable issue on deliberate indifference when the defendant purportedly "waiv[ed] off" complaints of "a medical emergency due to asthma" and told the asthmatic prisoner that he would have to "wait until rounds to receive his inhaler"); *see also Board v. Farnham*, 394 F.3d 469, 485 (7th Cir. 2005) (finding "deliberate indifference for summary judgment purposes" for correctional officers who "refuse[d] the man his inhaler" when they "knew or should have known" that the prisoner "was suffering from asthma, a serious medical condition").

**C.  Contradictory Documents**

Defendants request that this Court ignore some of plaintiff's accusations, which are arguably contradicted by reports attached to the complaint. (*See* ECF No. 14-1, at 7-8.) Although the Court may disregard "conclusory allegations" when they are "contradicted by documents referred to in the complaint," this doctrine is "only triggered upon a threshold

4

determination of a 'contradiction,' which only exists when the statements are 'inherently inconsistent.'" *Lawyers Funding Grp., LLC v. Harris*, No. 15-04059 MMM (Ex), 2015 WL 13298145, at *5 (C.D. Cal. Sept. 18, 2015).

Neither report establishes such an inherent inconsistency. First, the nurse's medical report states, "No visible injuries found." (ECF No. 1, at 15.) But Mitchell never claimed that the baton strikes left "visible" injuries. As for the pepper spray, the nurse confirmed "Chemical Agent Exposure," which is consistent with Mitchell's account. (*Id.*)

Second, the excerpt of Officer Hernandez's incident report does not mention any pepper-spraying or baton strikes. (ECF No. 1, at 17.) These omissions do not contradict Mitchell's account; both versions could be true. Perhaps Hernandez only saw part of the incident and missed the excessive force. Or maybe his incident report leaves out some derogatory facts. Or perhaps those details are addressed on the report's first page, which is not attached to the complaint. Similarly, while Hernandez suggests that Mitchell was the aggressor, this does not rebut Mitchell's assertion that the guards used excessive force when he was immobilized and helpless.

Thus, these reports do not contradict Mitchell's allegations.

## CONCLUSION

This Court recommends that defendants' motion to dismiss Mitchell's Eighth Amendment claims be **DENIED**. By August 21, 2019, the parties must file any objections to this report. *See* 28 U.S.C. § 636(b)(1). The party receiving any such objection has 14 days to file any response. *See* Fed. R. Civ. P. 72(b)(2).

Dated: August 7, 2019

Hon. Andrew G. Schopler
United States Magistrate Judge

5