UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jerome MITCHELL,<br><br>         Plaintiff,<br><br>v.<br><br>A. SILVA, et al.,<br><br>         Defendants. | Case No.: 3:18-cv-2044-DMS-AGS<br><br>**REPORT AND RECOMMENDATION TO DENY DEFENDANTS' SUMMARY-JUDGMENT MOTION (ECF 33) AND TO GRANT SUMMARY JUDGMENT FOR PLAINTIFF ON DEFENDANTS' EXHAUSTION DEFENSE** |

  Inmate Jerome Mitchell used prison "Form 602" to complain that guards used excessive force against him. In retaliation, a guard allegedly told him, "If you keep trying to file 602s[,] we[']re going to f—k you up." This threat, among others, prompted Mitchell to abandon his prison administrative appeal and instead bring this civil-rights lawsuit.

  The guards now move for summary judgment because Mitchell failed to exhaust his administrative appeals. That motion should be denied because the guards' alleged threats rendered those appeals effectively unavailable.

## BACKGROUND

  On July 6, 2018, according to plaintiff Mitchell, various guards at R.J. Donovan Correctional Facility violated his Eighth Amendment rights by using excessive force, including "smearing pepper spray on . . . [his] penis," and then ignoring his medical needs. (*See* ECF 33-6, at 4; *see generally* ECF 1, at 3-4.) Three days later, Mitchell submitted a

1

Form 602, registering an administrative grievance about this alleged misconduct. (*See* ECF 33-5, at 4; ECF 33-6, at 6-8.)

The next month, according to Mitchell, two of the guards implicated in the grievance threatened him about pressing such prison appeals. First, Officer Silva allegedly told Mitchell that if he wrote "anymore 602's," he "would get [his] ass beat and disappear." (ECF 37, at 4.) A few days later, Sergeant Poladian purportedly told Mitchell, "If you keep trying to file 602's[,] we[']re going to fuck you up." (*Id.* at 4-5, 7.) Mitchell says he filed no grievances about this intimidation because "I feared for my safety and life." (*Id.* at 6.)

Instead, shortly after the last threat, Mitchell sued the officers under 42 U.S.C. § 1983 for First and Eighth Amendment violations. (*See* ECF 1, at 3-5, 8.) The claims were based on the same facts as his still-pending excessive-force grievance, plus the guards' recent intimidating statements. (*See id.*) After filing suit, Mitchell appealed to prison officials for a response to his pending grievance. (*See* ECF 33-5, at 6; ECF 33-6, at 41.) But when the excessive-force grievance was denied, he never sought final review.

## DISCUSSION

Defendants argue that they are entitled to summary judgment because Mitchell failed to exhaust his administrative remedies. "Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton¸* 572 U.S. 650, 656 (2014). For summary-judgment rulings, courts must view the evidence "in the light most favorable to the opposing party." *Id.* at 657. That is, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 651. Regarding the failure to exhaust administrative remedies, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Albino v. Baca,* 747 F.3d 1162, 1166 (9th Cir. 2014).

A.  **Administrative Exhaustion**

A prisoner may not sue under 42 U.S.C. § 1983, "or any other Federal law, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Because an inmate's "failure to exhaust is an affirmative defense," *Jones v. Brock,* 549 U.S. 199, 216 (2007), defendants have the initial burden "to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. If defendants do so, the prisoner must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. "The ultimate burden of proof, however, remains with the defendants." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015).

Defendants satisfied their initial burden: An administrative appeal process was generally available, yet Mitchell failed to file any retaliation-based grievance and failed to pursue his excessive-force grievance to its conclusion. (*See* ECF 33-1, at 4-5; ECF 33-2, at 5, ¶¶21-22; ECF 33-5, at 5, ¶¶11-12; ECF 33-7, at 3-4, ¶¶5-6.)

So, Mitchell must now provide evidence of unavailability, and he has. A prison's grievance process is considered effectively "unavailable when prison administrators thwart inmates from taking advantage of it through . . . intimidation." *Ross v. Blake,* 136 S. Ct. 1850, 1860 (2016). Two witnesses—Mitchell and another inmate—swear that defendants told Mitchell that if he continued to "file 602s," he would get his "ass beat and disappear" and that "we're going to fuck you up." (*See* ECF 37, at 4-5, 7, 26.) Mitchell asserts that he "did not file any appeals regarding retaliation because I feared for my safety and life," and that he was "so scared[,] I figured I should file my complaint with the courts" rather than pursue the grievance process. (ECF 37, at 5-6; *see also id*. at 7 (Mitchell: defendants' "intimidation . . . made me fearful in the use of the process"); *id*. at 26 (inmate Darnell Catlin: the initial threat "scared [Mitchell] so much [that] Mitchell skipped breakfast"); ECF 33-1, at 4 (Mitchell: defendants' threats "shook me up").)

Then the question is: Have defendants carried their ultimate burden of proving that Mitchell failed to exhaust *available* administrative remedies? Or did the intimidation make these remedies effectively unavailable? Defendants' burden is especially daunting because they offer no evidence—or even argument—to refute the accusation that they threatened

3

Mitchell. Their summary-judgment filings simply don't mention the threats, other than noting that Mitchell never filed a grievance about them. (*See* ECF 33-2, at 5, ¶22; *see generally* ECF 33, 41.)

Rather than disputing the threats, defendants argue that Mitchell was "clearly aware that he still had remedies available" because he pursued appeals "with the prison after filing this civil action." (*See* ECF 41, at 5.) Yet defendants may not rely on "multiple unrelated [prison] appeals" to carry their burden of proving that administrative remedies were available for the claims Mitchell was scared to bring. *See Paramo*, 775 F.3d at 1192. For example, after filing this lawsuit, Mitchell wrote up grievances about: "property damage," a "request to repair the cable outlet in his cell," disputing his "classification score," the denial of a parole request, and "visitation matters." (*See* ECF 33-5, at 6-7; ECF 33-6, at 46-80.) But none of those grievances involved staff misconduct. Viewed in the light most favorable to Mitchell, when the guards told Mitchell not to "file 602s," they weren't objecting to filing grievances *generally*, but to filing grievances against *them*. So Mitchell might safely complain about his broken cable outlet, whereas elevating guard-related grievances could prove fatal.

Yet, after the threats, Mitchell submitted an inmate appeal for an update on his pending excessive-force grievance, which was stalled at second-level review. (*See* ECF 33-5, at 6, ¶13.c; ECF 33-6, at 41.) Does this prove that Mitchell didn't take the guards' threats seriously? Or rebut Mitchell's contention that he was "fearful in the use of the [prison] process"? (*See* ECF 37, at 7.) Not really. Since prison officials were still considering this grievance—and the defendant guards had already been questioned about it (ECF 33-6, at 5)—Mitchell could safely assume that requesting a status update wouldn't trigger violent reprisals. But it would be quite another thing for Mitchell to file new grievances against these guards, which might force them to be questioned (and notified) again. Likewise, he may have feared the expanded scrutiny entailed in elevating his existing grievance to the final review level.

Thus, this Court finds that Mitchell's administrative remedies were effectively unavailable as to any claims against these guards. Mitchell accused these officers of beating him and "smearing pepper spray on . . . [his] penis." (ECF 33-6, at 4.) The next month, those same guards told Mitchell that if he pursued inmate appeals, they would "beat" him or make him "disappear." (ECF 37, at 4.) Under these circumstances, no one could expect Mitchell to prosecute prison grievances to the bitter end against his tormentors. At least, defendants have not carried their burden of proving otherwise.

### B.     Summary Judgment for Mitchell on Exhaustion

When "the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment *sua sponte* for the nonmoving party." *Id.* at 1176. Before doing so, "great care must be exercised to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his or her opponent is not entitled to judgment as a matter of law." *Id.* at 1177 (alterations omitted).

Defendants had that opportunity. As in *Albino*, there "is nothing in the record to suggest that defendants' discovery with respect to exhaustion was curtailed in any way," and "most of the relevant evidence was within their knowledge and control." 747 F.3d at 1177. Mitchell raised the threats in his complaint, again in his summary-judgment response, and even in his deposition, testifying that Sergeant Poladian's retaliatory comments "shook me up" and "fucked me up." (ECF 1, at 5 (complaint); ECF 37, at 4-5, 7, 26 (response); ECF 33-1, at 4 (deposition).) While "defendants were on notice of the need to come forward with all their evidence in support of this motion," and even though "they had every incentive to do so," they never grappled with—or even mentioned—Mitchell's fundamental claim, that he abandoned his administrative remedies under threat. *Albino*, 747 F.3d at 1177; (*see, e.g.*, ECF 33, 33-2, 33-5, 33-6, 33-7, 41).

The evidence of those threats is undisputed. Prisoners need not risk life and limb to satisfy administrative exhaustion. Although Mitchell asked for an update on his excessive-force grievance after filing his lawsuit, he was not required to chance the guards' wrath by

5

pursuing the process further. Thus, Mitchell has carried his burden of proving unavailability, and is entitled to summary judgment.

## CONCLUSION

The Court recommends that defendants' summary-judgment motion be **DENIED**. And because the judge should decide the issue of administrative exhaustion, "if feasible, before reaching the merits of a prisoner's claim," *Albino*, 747 F.3d at 1170, this Court also recommends that Mitchell be **GRANTED** summary judgment on defendants' exhaustion defense. By August 4, 2020, the parties must file any objections to this report. *See* 28 U.S.C. § 636(b)(1). A party may respond to any such objection within 14 days of being served with it. *See* Fed. R. Civ. P. 72(b)(2).

Dated: July 21, 2020

Hon. Andrew G. Schopler
United States Magistrate Judge